UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**BILLIE MARIE COOKE,**

      **Plaintiff,**

**v.**                                              **Case No: 6:20-cv-1090-ACC-GJK**

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

REPORT AND RECOMMENDATION

Billie Marie Cooke (the "Claimant"), appeals a final decision of the Commissioner of Social Security (the "Commissioner"), denying her claim for Social Security Disability Benefits. Doc. No. 1. Claimant alleges a disability onset date of September 13, 2016. R. 36-37. Claimant argues that the Administrative Law Judge (the "ALJ") erred in finding that there are a significant number of jobs available in the national economy that Claimant could perform. Doc. No. 31 at 12. Specifically, Claimant argues that an opinion of a vocational expert based solely on job availability data obtained from a computer program was not substantial evidence the ALJ could rely on. *Id*. Upon consideration of the parties' arguments and the record, the Court recommends that the final decision of the Commissioner be **AFFIRMED.**

## I. STANDARD OF REVIEW.

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g) (2010). Substantial evidence is more than a scintilla–i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The Court must view the evidence as a whole, considering evidence that is favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560. The District Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

## II.     ANALYSIS.

Claimant has not worked since her job as a caretaker in a daycare in 2005. R. 36. Claimant began receiving treatment for her depression, back impairment, and neck impairment, most notably in January 2014, years before filing her Title XVI social security disability claim September 13, 2016. R. 22, 36. Claimant is currently uninsured and goes to a clinic for medical care. R. 45.

The ALJ found that Claimant had the following severe impairments: sciatica, degenerative disc disease, obesity, carpal tunnel syndrome, asthma, and depression. R. 18. The ALJ found that despite these impairments Claimant has the residual functional capacity ("RFC") to perform sedentary work with the following restrictions:

> [N]o climbing; no exposure to concentrated fumes, gasses, poorly ventilated areas or hazards; occasional stooping, crouching, crawling, kneeling, and balancing; and needs to be able to stand at her workstation every hour. The claimant is further limited to performing simple routine tasks, with only occasional exposure to the general public, and occasional collaboration with coworker and supervisors. The claimant needs to be able to ambulate to and from her duty station with a cane.

R. 21. At Step Five, the ALJ found that although Claimant could not perform her past relevant work, "there are jobs that exist in significant numbers in the national economy that the claimant can perform." R. 27.

In reaching her decision, the ALJ considered the testimony of a vocational expert that, given the Claimant's age, education, work experience, and residual functional capacity, the Claimant would be able to perform the requirements of the representative occupations of: document preparer, lens inserter, and final assembler, which had 42,000; 15,000; and 17,000 positions available in the national economy, respectively. R. 27. The ALJ also considered the vocational expert's further testimony that her opinion on the types of occupations Claimant could perform with Claimant's restrictions was based on her education and work experience. *Id*; R. 49-50.

Claimant argues that the decision of the ALJ is not supported by substantial evidence because the vocational expert relied solely on information gathered from the OccuBrowse program to determine the number of jobs available that Claimant can perform and because the number of available jobs determined by the vocational expert are not a "true number" of the jobs available in the national economy. R. 10-11. For the following reasons, the Court finds the Claimant's arguments unpersuasive.

At Step Five, "the ALJ considers the claimant's RFC, age education, and work experience to determine whether the claimant 'can make an adjustment to other work," in other words, that "there is other work available in significant numbers in the national economy that claimant has the ability to perform." *Phillips*

*v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). At this step, the ALJ "must articulate specific jobs that the claimant is able to perform, and this finding must be supporting by substantial evidence, not mere intuition or conjecture." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). If this is done through the use of a vocational expert, the ALJ must pose a hypothetical question to the vocational expert that incorporates all of the limitations eventually included in the RFC finding for the testimony to constitute substantial evidence. *Id.* However testimony from a vocational expert is not substantial evidence if the record reveals an apparent conflict between the Department of Occupational Titles (DOT) and the vocational expert's testimony and the ALJ fails in their duty to resolve the conflict. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1362 (11th Cir. 2018). This is the only scenario where the ALJ is independently required to verify a vocational expert's testimony. *Webster v. Comm'r of Soc. Sec.*, 773 F. App'x 553, 555-56 (11th Cir. 2019) (ALJ's findings of no disability affirmed, ALJ had no affirmative duty to investigate a conflict between the number of available jobs reported by a vocational expert and the number of available jobs shown in the figures provided by the Bureau of Labor Statistics through its publication of the Occupational Employment Statistics). Overall, determining the substantiality of the evidence offered by the vocational expert is done on a case-by-case basis that "takes into account all features of the vocational expert's testimony, as well as the

rest of the administrative record," a process which defers to the presiding ALJ, "who has seen the hearing up close." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1157 (2019); *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1281 (11th Cir. 2020) (we "must scrutinize the record as a whole to determine if the [ALJ's] decision is reasonable and supported by substantial evidence." (internal citations omitted)).

Here, the ALJ states that her decision at Step Five was "[b]ased on the testimony of the vocational expert . . . considering the claimant's age, education, work experience, and residual functional capacity." R. 28. At the hearing, the ALJ asked the vocational expert a hypothetical question that incorporated all the limitations eventually included in the RFC as required by the Eleventh Circuit. R. 49-50; *See Wilson v. Barnhart*, 284 F.3d at 1227. There is no indication that the credentials of the vocational expert were challenged and no indication that the reliability or validity of the OccuBrowse program itself was challenged in either the Claimant's brief questioning of the vocational expert or in the record in general.   R. 51-52.

Despite Claimant's assertion that the vocational expert relied solely on OccuBrowse, the vocational expert testified that the estimates she provided for each specific job were derived from her personal calculations using numbers from the Department of Labor ("DOL"), Bureau of Labor Statistics as well as numbers contained in groupings in the OccuBrowse program. R. 51-52; *see Goode*, 966 F.3d

at 1283-84. The vocational expert testified that OccuBrowse identifies the number of jobs in categories of work based on the DOL's statistics. *Id.*; *see Purdy v. Berryhill*, 887 F.3d 7, 16 (1st Cir. 2018) (Souter, J) (ALJ reliance on software numbers permitted where witness knew that the software obtained its numbers from the DOL). The vocational expert also offered her opinion that the numbers of available jobs were "conservative." R. 51-52.

When deciding whether an ALJ's decision was supported by substantial evidence, 'we look only to the evidence actually presented to the ALJ." *Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1009-10 (11th Cir. 2020) citing *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998). Here, the only questioning on the part of Claimant which may suggest a challenge to the numbers obtained by the vocational expert at the time of the hearing concerned the vocational expert's admission that the numbers of available jobs were estimates or averages, and not "true numbers." R. 52. However, when asked, the vocational expert explained how she calculated the numbers and that, because of how the DOL records job data, her numbers could not be precise or "true numbers," but that she "believe[s] [her] numbers are conservative."  R. 51-52. Such averaging is allowable in the Eleventh Circuit. *Goode*, 966 F.3d at 1283-84.  Claimant has presented no caselaw to the contrary.  Claimant also did not present job statistics inconsistent with those reported by the vocational expert nor did they challenge the credibility of the

vocational expert or the accuracy of OccuBrowse at the hearing. *See generally,* R.33-54. The ALJ, having been the one present at the hearing, could consider all this information when deciding how much weight to put on the vocational expert's opinion.

Nothing in the Record suggests that the ALJ had any reason to doubt the credibility of the vocational expert or the relative accuracy of her numbers, and Claimant does not argue such.   Therefore, it is recommended that the Court find that there was substantial evidence to support the ALJ's decision that there are a significant number of jobs in the national economy that Claimant can perform.

Accordingly, it is **RECOMMENDED** that:

1. This matter be **AFFIRMED**; and

2. The Clerk be directed to close the case.

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. Failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. 11th Cir. R. 3-1.

**RECOMMENDED** in Orlando, Florida, on August 26, 2021.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Shea A. Fugate
Attorney for Plaintiff
Law Offices of Shea A. Fugate
P.O. Box 940989
Maitland, FL 32794

Karin Hoppmann
Acting United States Attorney
John F. Rudy, III
Assistant United States Attorney
400 N. Tampa St.
Suite 3200
Tampa, FL 33602

Christopher Harris, Chief Counsel, Region IV
John C. Stoner, Deputy Regional Chief Counsel
Beverly E. Williams, Branch Chief
Rylan L. Smith, Assistant Regional Counsel
Social Security Administration
Office of the General Counsel
Atlanta Federal Center
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia 30303-8920
Rylan.Smith@ssa.gov

The Honorable K. Barlow
Administrative Law Judge
Office of Hearing Operations
Bldg 400, Suite 400
8880 Freedom Crossing Trail
Jacksonville, Florida 32256-1224